UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PORFIRIO LEON GUZMAN,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>KILOKO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>　　　　　　　Defendant. | Case No. 1:21-cv-01039-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 20, 22)<br><br>FOURTEEN-DAY DEADLINE |

**INTRODUCTION**

Plaintiff Porfirio Leon Guzman ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on Plaintiff's motion for summary and the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for issuance of findings and recommendations.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's motion for summary judgment, denying his appeal, and affirming the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff protectively filed an application for supplemental security income on August 14, 2017. AR 26, 322-27.[2] Plaintiff alleged that he became disabled on February 7, 2004, due to neuralgia, migraines, depression and anxiety, and cervical and facial pain. AR 349. Plaintiff's applications were denied initially and on reconsideration. AR 229-33, 238-42. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Rebecca LaRiccia issued an unfavorable decision on April 8, 2020. AR 20-36, 41-48. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making the ALJ's decision the Commissioner's final decision. AR 6-8. This appeal followed.

### **Hearing Testimony**

On March 3, 2020, ALJ LaRiccia held a telephonic hearing. Plaintiff did not appear, but was represented by attorney, Melissa Proudian. Robin Cook, an impartial vocational expert, also appeared. AR 43, 45.

The ALJ elicited testimony from the VE regarding hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, with a high school education, and no past relevant work experience. This individual could perform work at the medium range of physical exertion. He could lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk six hours, could sit six hours in an eight-hour workday, could not engage in constant flexion of the neck, and must avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and perfumes. This individual could understand, remember, and carry out

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

simple instructions that could be learned in 30 days or less through demonstration and could maintain concentration, persistence, and pace through those simple instructions for two-hour intervals, after which he would need a ten-minute break that could be accommodated by normal morning, afternoon, and lunch breaks. The VE testified that such an individual could perform work in the national economy, such as kitchen helper, dining room attendant, and cook helper. AR 45-46. If this individual was occasionally off task up to one-third of the workday, then there would not be any competitive work available in the national economy. The VE testified that once an employee reaches approximately 15% off task, this becomes intolerable to employers. AR 46-47.

In response to questions from Plaintiff's attorney, the VE testified that an absenteeism rate of three days or more per month would be sufficient to preclude all employment. AR 47.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 26-36. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 14, 2017, the application date. AR 29. The ALJ identified the following severe impairments: degenerative disc disease, migraines, depression, and anxiety. AR 29. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 30-31.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, except that that he could lift and carry 50 pounds occasionally and 25 pounds frequently, could stand and walk about six hours, and could sit about six hours in an 8-hour workday. He could not engage in constant flexion of the neck and must avoid concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas, and perfumes. He could understand, remember, and carry out simple instructions that could be learned in 30 days or less through demonstration and could maintain concentration, persistence, and pace to those simple

instructions for two-hour intervals after which he would require a 10-minute break that could be accommodated by normal morning, afternoon, and lunch breaks. AR 31-35. The ALJ found that Plaintiff did not have any past relevant work, but with this RFC there were jobs in the national economy that he could perform, such as kitchen helper, dining room attendant, and cook helper. AR 35-36. The ALJ therefore concluded that Plaintiff had not been under a disability since August 14, 2017, the date the application was filed. AR 36.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION**[3]

Plaintiff first asserts that ALJ did not properly evaluate the medical evidence in developing the RFC. Plaintiff also asserts that the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints.

### A. RFC

Plaintiff contends that in developing Plaintiff's RFC, the ALJ ignored substantial evidence, failed to resolve material inconsistencies regarding Plaintiff's physical strength, and failed to include restrictions regarding Plaintiff's capacity to appropriately interact with coworkers, peers, and the general public. (Doc. 20 at p. 10.)

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all of the relevant medical in your case record."). Indeed, "[t]he RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence." *Ashlock v. Kijakazi*, No. 1:21-CV-01687-GSA, 2022 WL 2307594, at *3 (E.D. Cal. June 27, 2022). "In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints." *Karl v. Kijakazi*, No. 1:21-cv-01576-SKO, 2023 WL 3794334, at *4 (E.D. Cal. June 1, 2023) (citing *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and [the] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

///

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

Physical RFC

Plaintiff argues that the ALJ ignored or mischaracterized evidence regarding Plaintiff's severely diminished grip strength when developing the RFC and correspondingly failed to account for any limitations in the ability to finger, grasp, and handle. (Doc. 20 at p. 10.)

To support this argument, Plaintiff first asserts that with respect to a consultative examination on November 14, 2017, the ALJ falsely stated that Plaintiff had full strength in all extremities. Plaintiff claims that the exam instead revealed severely diminished grip strength. (*Id.*) According to the record, Dr. Rustom F. Damania completed a consultative examination on November 14, 2017. AR 521-25. Plaintiff's grip strength with the use of Jamar Hand Dynamometer tested as follows: Right = 0, 0, 0 and Left = 5, 5, 0. AR 523. On physical examination, Plaintiff's "[m]otor strength was 5/5 in all extremities with good tone bilaterally with good active range of motion." AR 524. Based on the objective clinical findings, Dr. Damania opined that Plaintiff's standing and walking capacity was 6 hours and his maximum sitting capacity was 6 hours. Plaintiff did not need an assistive device for ambulation, and he could lift and carry 50 pounds occasionally and 25 pounds frequently. He did not have any postural or manipulative limitations. He also did not have any visual, communicative, or workplace environmental impairments. AR 525. In summarizing Dr. Damania's opinion, the ALJ indicated that on examination Plaintiff "had full strength in all tested extremities." AR 33. The Court finds this characterization by the ALJ consistent with Dr. Damania's clinical finding of 5/5 motor strength "in all extremities." AR 524. Although Plaintiff faults the ALJ for failing to address the grip strength findings, the ALJ found Dr. Damania's evaluation and opinion persuasive, and that opinion did not identify any handling, grasping, or fingering limitations resulting from the grip strength testing. AR 34, 525. Plaintiff has not adequately challenged the ALJ's evaluation of the persuasiveness of the consultative examiner's opinion.

Likewise, the ALJ found persuasive the prior administrative findings of the State agency medical consultants, L. Bobba, M.D. and L. Ocrant. AR 34. Dr. Bobba and Dr. Ocrant both considered Dr. Damania's examination results and they also did not identify any handling or fingering limitations based on Dr. Damania's grip strength testing. AR 164, 167-69, 219-20. Of particular relevance here, on reconsideration, Dr. Ocrant expressly considered and rejected the grip strength

findings, commenting: "Clearly the clt is exaggerating at the CE and giving poor effort. Witness the grip strengths despite no atrophy or neurological deficits." AR 220. Plaintiff has not challenged the ALJ's evaluation of the persuasiveness of the prior administrative findings, nor does Plaintiff mention Dr. Ocrant's determination relative to Dr. Damania's grip strength testing results.

Plaintiff next asserts that the ALJ failed to account for a later examination in April 2019 that reportedly was consistent with a loss of grip strength in the hands. (Doc. 20 at p. 10, citing AR 627.) However, that examination identified an instance of decreased strength in the left upper extremity, not grip strength. AR 627 ("Decreased strength on LUE--+3/5").

Here, the ALJ determined that exertional imitations beyond the medium level would not be consistent with examination findings demonstrating the claimant to generally have normal strength. AR 34, citing AR 474 ("Normal ROM, normal strength"), 524 (5/5 motor strength in all extremities), 543 ("normal strength"). As the ALJ correctly determined, Plaintiff's treatment records generally reflected normal strength and did not consistently document any ongoing decreased grip strength (or even decreased extremity strength) findings on examination. *See*, *e.g.*, AR 441-42, 474, 495, 499, 536, 542-43, 615, 619-20, 623, 631, 635-36, 639-40, 644, 650-51.

Based on the above, the Court finds that substantial evidence supports the ALJ's RFC determination relative to any grip strength restrictions or limitations in the ability to finger, grasp, and handle.

Mental RFC

Plaintiff next argues that the ALJ erred in assessing mental health limitations and "failed to account for significant restrictions in Plaintiff's ability to interact socially." (Doc. 20 at p. 11.) Plaintiff contends that there is substantial evidence to support that he is unable to sustain socially appropriate behavior. As examples, Plaintiff cites his reports to treatment providers that he had no friends, and that he felt oppressed and like killing or harming someone. (*Id.* at p. 12, citing AR 504, 506.) Plaintiff also cites treatment notes indicating he struggled to maintain relationships and his depression and anxiety were aggravated by social situations. (*Id.*, citing AR 548, 643.) Based on this evidence, Plaintiff complains that the ALJ failed to assess corresponding work-related restrictions in the mental RFC and claims that the ALJ "relied almost exclusively on the fact that [Plaintiff] could

7

maintain eye contact to support her position that Plaintiff was not limited in this domain." (*Id.*) The Court disagrees.

While it is true that the ALJ noted Plaintiff's "treatment records lack indications that the claimant lacked proper eye contact or experienced much irritability during his appointments," this was not the sole basis for excluding any social interaction limitations from the RFC. AR 30. Rather, in evaluating Plaintiff's mental RFC, the ALJ found persuasive the prior administrative findings of the State agency psychological consultants, Tawnya Brode, Psy.D, and Michael D'Adamo, Ph.D. AR 34, 169-170, 221-22.) These physicians both indicated that Plaintiff did *not* have social interaction limitations, and explained, as to socialization specifically, that Plaintiff had sufficient ability to maintain appropriate behavior in a context of ordinary social demands and public contact and was capable of accepting instructions and responding appropriately to feedback from supervisors. AR 170, 222. Further, these physicians identified moderate limitations only in (1) the ability to carry out detailed instructions, (2) the ability to maintain attention and concentration for extended periods; and (3) in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 169-70, 221. The ALJ determined that "both physician's findings that the claimant does not experience moderate or greater impairments in other areas of mental functioning, are consistent with the generally benign nature of the claimant's mental status examinations." AR 34, citing AR 495 (normal psychiatric findings; appropriate mood and affect), 499 (normal psychiatric findings; appropriate mood and affect; normal insight and judgment); 506 (behavior within cultural norms, engaging, cooperative, intrusive; cooperative with examiner), 515 (cooperative, normal thought contents, insight, and judgment), 517, 519, 551, 553, 556, 558, 560, 562, 564, 573 (behavior within cultural norms, cooperative, intrusive; cooperative with examiner, dominating, engaging), 579, 651. Plaintiff has not challenged the ALJ's evaluation of the prior administrative findings nor the generally benign nature of Plaintiff's mental status examinations.

The ALJ further determined that Plaintiff's allegations of disabling psychiatric limitations were not consistent with Plaintiff's remarks that his anxiety improved with treatment (AR 33, citing AR C13F [AR 613-53]). Consistent with this determination, the ALJ also found that Dr. Brode supported

her prior administrative findings by explaining that Plaintiff continued to find medical benefit for anxiety. AR 34, 183. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

In addition to the prior administrative findings, the ALJ also considered that Plaintiff's reported social limitations were not consistent with treatment notes describing Plaintiff as cooperative.[4] AR 33. As support, the ALJ cited Plaintiff's treatment records, which consistently revealed that he was cooperative. AR 442, 474, 506 (cooperative and engaging toward examiner; behavior within cultural norms), 513, 515, 517, 519, 551; 556, 558, 560, 562, 564, 569, 573, 578. As addressed below, an ALJ may properly consider a lack of supporting evidence when evaluating subjective complaints. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Based on the foregoing, the Court finds that the ALJ's RFC determination is supported by substantial evidence. To the extent Plaintiff suggests an alternative interpretation of the evidence, this is not sufficient to establish reversible error. If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020), citing *Burch*, 400 F.3d at 679.

**B. Symptom Testimony**

Plaintiff maintains that the ALJ failed to set forth reasons, consistent with and supported by the evidence, for discounting Plaintiff's complaints of symptoms relative to his mental health impairments and his physical impairments. (Doc. 20 at p. 14.)

---

[4] Elsewhere in the decision, the ALJ considered that Plaintiff's reports about social problems were contradicted by Plaintiff's daily activities that require social interactions, such as shopping in stores. AR 30, 375 (shopping in stores), 376 (denying any problems getting along with family, friends, neighbors, or others). An ALJ may properly consider whether a claimant engages in daily activities inconsistent with alleged symptoms. *See Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), *superseded by regulation on other grounds.*

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196; SSR 16-3p. First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but discounted his statements concerning the intensity, persistence and limiting effects of those symptoms. AR 32. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided specific, clear and convincing reasons to discount Plaintiff's subjective complaints regarding his physical and mental impairments. First, the ALJ determined that Plaintiff's physical allegations were not consistent with examination findings demonstrating normal range of motion and normal strength. AR 33. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch*, 400 F.3d at 681. Here, for example, the ALJ cited an examination record demonstrating that Plaintiff had normal range of motion and normal strength. AR 33, 474. The ALJ also determined that Plaintiff's complaints were not consistent with reports to his treatment providers that lacked ongoing complaints of symptoms in his upper extremities. AR 33.

In challenging the ALJ's determination relative to his upper extremity strength, Plaintiff faults the ALJ for relying only on a single record that pre-dates his application. (Doc. 20 at p. 14.) While Plaintiff correctly notes that the ALJ cited a single treatment record demonstrating that Plaintiff had normal range of motion and normal strength, Plaintiff likewise relies primarily on an isolated treatment record showing decreased strength in the left upper extremity. (*Id.*, citing AR 626). However, this single record does not undermine the ALJ's determination that the treatment record lacked evidence of *ongoing* complaints of symptoms in Plaintiff's upper extremities. It also is apparent from the ALJ's decision that she considered additional records demonstrating that Plaintiff

generally had normal strength. *See* AR 34, citing AR 474 ("Normal ROM, normal strength"), 524 (5/5 motor strength in all extremities), 543 ("normal strength").  Because the ALJ's "path may reasonably be discerned," the Court will defer to the ALJ's decision. *See Wilson v. Berryhill*, 757 F. App'x 595, 597 (9th Cir. 2019) (concluding court will defer to the ALJ's decision).  The only other records referenced by Plaintiff are those from Dr. Damania's consultative examination.  (Doc. 20 at p. 14, citing AR 523, 525.)  Plaintiff again contends that the ALJ erred by mischaracterizing the evidence regarding upper extremity limitations relative to Dr. Damania's grip strength findings.  As discussed above, however, the Court has determined that the ALJ properly summarized Dr. Damania's finding that "[m]otor strength was 5/5 in all extremities," AR 524, as "full strength in all tested extremities," AR 33.

In addition to evidence regarding Plaintiff's motor strength and range of motion, the ALJ found that Plaintiff's alleged walking difficulties were inconsistent with treatment records demonstrating a normal gait.  AR 33, citing Ex. AR 623 ("Gait – Normal."), 627 (same), 631, 635, 639, 640 ("Gait – limp, left side, full weight bearing."), 650-51 ("Gait – Normal.").  The ALJ also found Plaintiff's reported memory limitations were inconsistent with examinations demonstrating intact memory findings.  AR 33, citing AR 495 ("Memory – Normal."), 499, 507 (fair), 515 (normal cognition), 517 (same), 519 (same), 551, 553, 556, 558, 560, 562, 564, 574, 579, 651.  The ALJ additionally determined that Plaintiff's reported social limitations were not supported by treatment notes describing the claimant as cooperative, citing treatment records that consistently demonstrated that he was cooperative. AR 33, citing AR 442, 474, 506 (cooperative and engaging toward examiner; behavior within cultural norms), 513, 515, 517, 519, 551; 556, 558, 560, 562, 564, 569, 573, 578.

Next, the ALJ found Plaintiff's allegations of disabling psychiatric limitations to be inconsistent with his remarks that his anxiety improved with treatment.  AR 33, citing Ex. C13F [AR 613-53].  Again, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."  *Wellington*, 878 F.3d at 876; *see also Warre*, 439 F.3d at 1006 ("Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits.").  Plaintiff concedes that a review of the cited evidence "does in fact reveal that Plaintiff reported improvement." (Doc. 20 at p. 14.).  He argues, however, that because the

11

ALJ credited this self-report, she also should have accepted his self-reports describing his symptoms. The Court is not persuaded. "An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted); *cf. Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (explaining that Ninth Circuit has made clear that "an ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act") (citation and internal quotation marks omitted).

Next, the ALJ determined that Plaintiff's allegations of disability were not consistent with the infrequent and conservative nature of his medical care, which lacked inpatient psychiatric care or invasive surgical interventions for his physical impairments. AR 33-34. An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment). In this case, Plaintiff disagrees with the ALJ's characterization of infrequent and conservative medical care, pointing to evidence that he visited the emergency room on two occasions for heart palpitations, had been "in and out of psychiatric care for over 40 years," and he tried certain medications without relief. (Doc. 20 at p. 15, citing AR 442, 473, 504, 616 (SSRIs). Plaintiff's argument and evidence do not undermine the ALJ's conclusion regarding the conservative nature of his treatment. Plaintiff's evidence of heart palpitations predates the application date. AR 442 (April 2017); 473 (August 2016). The remainder of Plaintiff's argument generally affirms the ALJ's conclusion as to the conservative (medications) and inconsistent nature of his mental health treatment ("in and out of psychiatric care").[5]

Plaintiff also appears to fault the ALJ for failing to consider Plaintiff's report that his medications, particularly Xanax, caused him excessive sleepiness. Plaintiff posits that it stands to reason that an individual that requires medication … yet suffers from excessive sleepiness would have significant deficits, and even confusion or memory loss…. (Doc. 20 at p. 15.) However, as the ALJ

---

[5] Plaintiff has not cited evidence suggesting that any inconsistent mental health treatment was attributable to his mental illness. *See Rivota v. Saul*, No. 1:18-CV-01342-BAM, 2020 WL 1306985, at *6 (E.D. Cal. Mar. 19, 2020) (citing *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

noted and as discussed above, Plaintiff's treatment records generally reflected intact memory and cognition and benign mental status examinations.

Based on the above, the Court finds that the ALJ did not err in the evaluation of Plaintiff's subjective complaints. Even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for summary judgment be denied;
2. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and
3. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Porfirio Leon Guzman.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.

*Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 28, 2023**                            /s/ *Barbara A. McAuliffe*
                                                                    UNITED STATES MAGISTRATE JUDGE